SEYMOUR, Circuit Judge,
with whom JOHN C. PORFILIO, Circuit Judge, joins,
concurring.
As the majority and dissent agree, this case turns on whether the government re *1139 tains discretion under the contracts with the water users to apply the provisions of the Endangered Species Act (ESA). I agree completely with the scholarly and comprehensive opinion of my colleague that the contracts themselves provide such discretion. I write separately only to expand alternatively upon the doctrine of unmistakable terms, a principle of federal contract law that has been, curiously in my view, largely ignored in this litigation.[1] Thus, even if I were to agree with the dissent that the contracts themselves do not expressly retain authority in the agency to reduce water deliveries except in the event of naturally caused water shortages, under the unmistakable terms doctrine the ESA nonetheless modifies the contracts because the contracts do not affirmatively state that future legislation will not apply.
As described by the Supreme Court, the doctrine of unmistakable terms posits that
absent an “unmistakable” provision to the contrary, contractual arrangements, including those to which a sovereign itself is a party, remain subject to subsequent legislation by the sovereign. We thus rejected the proposal to find that a sovereign forever waives the right to exercise one of its sovereign powers unless it expressly reserves the right to exercise that power in the contract, and held instead that unmistakability was needed for waiver, not reservation.
United States v. Winstar Corp., 518 U.S. 839, 877-78, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (citing Bowen v. Pub. Agencies Opposed to Social Security Entrapment, 477 U.S. 41, 52, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986) (internal quotations omitted)) (Souter, J., joined by Stevens, J., Breyer, J., and O’Connor, J.). In other words, a contract to which the government is a party remains subject to the demands of a subsequent exercise of sovereign power unless the contract expressly provides in unmistakable terms that subsequent sovereign acts will not affect it. A silent contract preserves the government’s right to modify it by subsequent legislation.
Given the various opinions in Winstar, none of which commanded a majority, it is clear that not all contracts to which the government is a party are subject to the unmistakable terms doctrine. See Yankee Atomic Elec. Co. v. United States, 112 F.3d 1569, 1578-79 (Fed.Cir.1997); Joan E. Drake, Contractual Discretion and the Endangered Species Act: Can the Bureau of Reclamation Reallocate Federal Project Water for Endangered Species in the Middle Rio Grande?, 41 Nat. Resourobs J. 487, 523 (2001) (“In sum, the fractured Winstar *1140 decision leaves us with some uncertainty regarding the extent and applicability of the unmistakable terms doctrine in specific situations.”)- Significantly for our purposes, however, the justices all agreed in Winstar that the doctrine nonetheless has continued viability, and cases subsequent to Winstar have found it dispositive in a variety of circumstances. See, e.g., Klamath Water Users Protective Ass’n v. Patterson, 204 F.3d 1206, 1213-14 (9th Cir.1999); Rhode Island Laborers’Dist. Council v. Rhode Island, 145 F.3d 42, 44 (1st Cir.1998); Tamarind Resort Assoc. v. Gov’t of the Virgin Islands, 138 F.3d 107, 112 (3d Cir.1998). A careful reading of the opinions in Winstar reveals that a majority of the justices would agree that it applies here.
Under the Court’s principle opinion, authored by Justice Souter and joined by three other justices, “application of the doctrine ... turns on whether enforcement of the contractual obligation alleged would block the exercise of a sovereign power of the Government.” Winstar, 518 U.S. at 879, 116 S.Ct. 2432. In that case, the plaintiffs sought only damages from the government for its breach of contract occasioned by the applicability of legislation enacted after the contract was executed. Most significantly for our purposes, the plaintiffs did not seek injunctive relief or some form of exemption to prevent the subsequent legislation from applying to their contracts; rather, they merely sought damages for the loss suffered as a result of the application of that new law.
The [plaintiffs] do not claim that the Bank Board and FSLIC purported to bind Congress to ossify the law in conformity to the contracts; they seek no injunction against application of FIR-REA’s new capital requirements to them and no exemption from FIRREA’s terms. They simply claim that the Government assumed the risk that subsequent changes in the law might prevent it from performing, and agreed to pay damages in the event that such failure to perform caused financial injury.
Id. at 871, 116 S.Ct. 2432. Indeed, the plaintiffs acknowledged that the contracting government agencies could not bind Congress not to change government policy. Id. at 881, 116 S.Ct. 2432. Justice Souter rejected the government’s argument that the unmistakable terms doctrine precluded an award of damages for breach of the contract in Winstar, holding that such an award did not block the exercise of sovereign power because the government remained free to enforce against these very plaintiffs its sovereign authority as embodied in the subsequent legislation. Justice Souter pointed out that when the government indemnifies its contracting partners against the risk of financial losses arising from regulatory change, its sovereign powers are not implicated at all where “there has been no demonstration that awarding damages for breach would be tantamount to any such limitation.” Id. at 881, 116 S.Ct. 2432.
In the instant case, to the contrary, defendants are water users who seek to prevent the government from taking any of the water for ESA purposes. In other words, enforcement of the contractual provisions as demanded by defendants would effectively limit the government’s sovereign authority to enforce the provisions of the ESA. Under the analysis posited by Justice Souter, therefore, the unmistakable terms doctrine clearly applies to this contract. Execution of the contract itself and the duties imposed under the Endangered Species Act both embody acts of sovereign authority. The government has not waived in unmistakable terms its power to impose environmental laws on these contracts, and it is clear that enforcing the contract provisions as demanded by the *1141 water users would frustrate the government’s obligations under the ESA.
The doctrine also applies here under the position of the dissenters in Winstar. Writing in dissent, Justice Rehnquist, joined by Justice Ginsburg, viewed the principal opinion as “drastically reduc[ing] the scope of the unmistakability doctrine, shrouding the residue with clouds of uncertainty, and [limiting] the sovereign acts doctrine so that it will have virtually no future application.” Id. at 924, 116 S.Ct. 2432. The dissenters disputed the principle opinion’s,, view that the contract in question did not impact the sovereign’s power because it only involved a request for damages that was not the equivalent of an injunction against or exemption from the subsequent legislation. Id. at 926, 116 S.Ct. 2432. Under the dissenters’ view, the absence of an unmistakable contract term waiving the government’s right to amend the contract by subsequent legislation was dispositive and the doctrine should have been applied to the contract in Winstar to preclude an award of damages. The unmistakable terms doctrine thus applies in the circumstances before us under both the principle opinion in Winstar, in which four justices joined, and under the dissenting opinion to which two justices subscribed.
Although couched in various ways, the dissent here would hold that the doctrine does not apply to these contracts because the government has no discretion under the contracts themselves to change the contract terms and thereby comply with the mandates of the ESA. The dissent stands the unmistakable terms doctrine on its head. The dissent would require that a contract expressly reserve the agency’s discretion to modify its terms, while the unmistakable terms doctrine holds, exactly to the contrary, that a silent contract preserves the sovereign’s power to modify by subsequent legislation. Under the dissent’s view silence negates governmental authority, while under the doctrine silence preserves it. Moreover, by asserting that the unmistakable terms doctrine only applies if the contract says it does, the dissent renders the doctrine meaningless. If the contract itself provides that it is subject to subsequent legislation, resort to the doctrine would never be necessary.
The applicable analysis is straightforward and does not turn on discretion. The government clearly needs no grant of discretion to exercise its sovereign power. Once it has done so, the issue is whether the resulting legislation applies to pre-ex-isting contracts. The answer is provided in part by the unmistakable terms doctrine, which holds that unless the government has surrendered its sovereign authority in unmistakable terms, the contract remains subject to subsequent legislation. In this case, as the dissent concedes, the contracts do not affirmatively provide in unmistakable terms that they will not be subject to subsequent legislation. Accordingly, while I join completely the superb opinion of my colleague that concludes the government expressly reserved discretion in the contracts here, I also believe the doctrine of unmistakable terms mandates the same result.

. I am reminded of
"... the curious incident of the dog in the night-time.”
“The dog did nothing in the night-time.” "That was the curious incident,” remarked Sherlock Holmes.
Sir Arthur Conan Doyle, Silver Blaze, in The Adventures and Memoirs of Sherlock Holmes 272 (Modern Library 2001) (1894).
I note in particular the failure by the federal defendants to discuss their reasons, if any, for concluding that the doctrine does not apply here, to respond to the argument by others that it does apply, or indeed even to mention the unmistakable terms doctrine in passing. One authority has made the following observation relevant to this failure:
For most of its history and in most of the West, the Bureau has avoided confrontation and controversy by siding with irrigators, even when that meant ignoring clear requirements of federal law.... But while it may be reluctant to act, the federal government clearly has considerable authority over the use of project water.
Reed D. Benson, Whose Water Is It? Private Rights and Public Authority Over Reclamation Project Water, 16 Va. Envtl. L.J. 363, 409-10 (1997). Indeed this authority recognizes, as the dissent refuses to do, that "even though it has entered into a contractual relationship to deliver water, the United States retains its sovereign authority unless surrendered in unmistakable terms.” Id. at 412.